The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Sit, please. All right, we'll begin with the case of Warren v. Polk, and Ms. Parks, we'll hear from you. Go ahead. May it please the Court. My name is Kristen Parks, and along with Jonathan Brown and Elizabeth Simpson, I represent the appellant in this case. What this case comes down to is a very basic concept from Simmons v. South Carolina. The State may not create a false dilemma by advancing generalized arguments of future dangerousness while at the same time preventing the defendant from letting the jury know that he will never be released on parole. When the State asks the jury to impose the death penalty as it did in this case, based on a defendant's future dangerousness, due process requires that the defendant not be sentenced to death based on the jury's incorrect misunderstanding of his parole eligibility. In Mr. Warren's case, the prosecutor argued future dangerousness throughout the closing argument. He spoke of Warren's habit of and addiction to killing women and asked, for example, what will stop him? How many more chances do we have to give him? But Mr. Warren had no more chances. He had already been stopped when he was sentenced to death in Buncombe County. Trial counsel asked three times for a Simmons instruction to inform the jury that Mr. Warren was not eligible for parole. The trial court denied these requests, ruling that the Buncombe County conviction could be overturned. In response to counsel's request for the instruction, the court admonished trial counsel, we will not discuss it. The Simmons court was clear that if there's any chance a jury may mistakenly fear the defendant will be free to kill again, this misunderstanding pervades the deliberations and violates due process. Once the State made Warren's future dangerousness an issue in this- Counsel, can I just ask you a question about Simmons? I mean, in Simmons, the court found specifically that the prosecutor's argument implied that the defendant would be let out eventually if the jury didn't recommend the death sentence. There was sort of a forward-looking appeal to the jury. This defendant, in the future, will get out if you don't apply the death penalty. And in reading- I will just tell you, I'll go right to my fundamental concern with your argument. In reading the prosecutor's argument here, it seems to me it's entirely backward-looking. You should impose the death penalty because of what the defendant did. He killed these three women. Nothing stopped him. He didn't take the first chance or the second chance. He was given to call it a day. But it's all backward-looking. I didn't see anywhere where the prosecutor said or implied to the jury, looking to the future, this person might get out and you should make sure that doesn't happen. Can you point me to where the prosecutor said something like that? Yes, Your Honor. There's one specific example on Joint Appendix page 1734. In describing the South Carolina murder, the prosecutor said, I contend to you that this is why women carry cellular phones, because you never can tell when Leslie Warren is going to be coming down the road and offering to give you help. That's why you need that cell phone. So, Your Honor, that's definitely forward-looking. And when you gave the example of how many more- In other words, the South Carolina murder covered the time following that murder, but before the current murder. I wonder, if you read the whole closing argument in context, it looked like the prosecutor had about three or four themes. I don't remember if it was three or four. And clearly devoted each section of the argument to those themes. And the quotes that you took were from the first theme, where he was trying to talk about the moral reprehensibleness of the crime, which was deserving of the death penalty. In the context of that, he used the word, he needs to be stopped. And I assume the man meant he needs to be stopped with the death penalty, because of the context. But I share the view that I could not see anywhere an assumption that he would be on the street or be released, or that he was going to be a threat to society if you don't kill him. And in the contrast, Mr. Warren's counsel, that wasn't you, was it? Did you argue? Okay, Mr. Warren's counsel argued he had a chance to say it, that the man would be in prison. He started to say it and abruptly ended it and didn't say it. But he could have said he'll be in prison for the rest of his life and chose not to. Of course, Simmons authorized him to do it. But anyway, that's my take. And I have the same question, is the theme, nowhere is the theme looking at an assumption that he'll be on the street or be released. And we're under a standard of review that's a pretty high barrier, because we're really deciding not whether we fully agree, but whether the state acted reasonably in making its conclusion. And I don't know if you remember a few months ago, the Supreme Court chastised us for not recognizing that in LeBlanc. That's bad timing for me, Your Honor. Let me try to answer one part of your question first, and that is the issue about whether trial counsel brought it up. Your Honor, in both Kelly and Schaefer, trial counsel did bring up and made comments sort of like you suggested, that this person isn't going to be released. And the Supreme Court said in both of those cases that that's not enough, that the trial court has a duty to make sure there's no misunderstanding with the jury that a proper instruction be given. But as to your question about whether arguments of future dangerousness were made, Your Honor, one thing that might be helpful for this court is to look at what other circuit courts have found are arguments of future dangerousness. The Fifth Circuit in Hodges specifically found that the state's argument about the risk of giving the defendant another chance to commit a crime was an argument of future dangerousness. That's like the statement in this case, how many more chances do we give him? It's not, gosh, we shouldn't have given him these chances in the past. Would it make a difference if that statement were made in the context where in this case we need the death penalty? How many more chances are you going to give him? The death penalty is the only answer. In that context, you wouldn't have trouble, would you? But, Your Honor, the state knew that he already had the death penalty. He didn't have any more chances. So when the state asked the jury how many more chances should we give him, the state already knew he didn't have any more chances. Why do you say that? Because he had the death penalty. You mean in Buncombe County? In Buncombe County. That wasn't final. That was still pending. Your Honor, under North Carolina law, adjudication is final once the judgment and commitment is signed. I understand, but it's still on review, isn't it? Yes, Your Honor, it is.  Both said that any future exigencies like appeals are not valid. The question is, was this defendant parole eligible on the day he was sentenced? I mean, clearly the prosecutor was assuming Buncombe wasn't final because he said how many more chances? He had a chance in South Carolina. He had a chance in Buncombe County, and now he is here for the third time committing a murder. He needs a death penalty. That's the thesis. Yes, Your Honor, that is what the prosecutor was assuming, but that's not what the Supreme Court tells us that it's proper to look at. The Supreme Court specifically rejected that argument in Simmons when South Carolina made it and said that they would not consider future exigencies. So in Simmons, in Ramdas, and then again in Lynch. No, I'm talking about not what could be said, what the prosecutor did say. The prosecutor assumed that Buncombe County gave him a further chance to commit murder in the Johnson case, this case. And so the notion that you say the prosecutor knew he already had the death penalty and didn't need to argue it anymore, that isn't the point he was making. He didn't try to say we need two death penalties. He's basically saying he had two chances. Anyway, you understand my... It's a little bit of an argument about what's being argued and what's being said, and I guess I get to my question, is should we be telling the state Supreme Court that it acted out of the block, I mean totally unreasonably, in reaching the conclusion? That's what this court did in Richmond, Your Honor. In Richmond, there was one reference to future dangerousness made at the end of the argument. In this case, Your Honors, during the prosecutor's closing argument, references were made to future dangerousness when the argument began on joint appendix page 1732 in half the pages. Half the pages of the closing argument included references to future dangerousness, and I do include references to antisocial behavior. But the Third Circuit and Bronstein found that arguments about antisocial behavior, because that is something that continues, it's fixed, it's unchanged, is an argument of future dangerousness. Does it make any difference in this case, though, that this defendant was not parole-ineligible on the present crime at the time that his case was being presented? In other words, the jury in this case had the option of sentencing him to life, not life without parole. Why isn't that a distinction? Your Honor, this court in Richmond said that it is not a distinction. Simmons, Lynch, and Ramdas all said it's whether he is parole-eligible on the day he's sentenced. Okay. Then how do you fit the decision in Campbell in with that line of cases? Our Campbell case back in 2006 where we talked about functional ineligibility and rejected that concept? Yes, Your Honor. But Campbell was not parole-ineligible as a matter of law. Virginia law, on the day Campbell was sentenced, did not allow his judgment to be final because he had just pled guilty the week before. Campbell said in the opinion that it was not contrary to Richmond, and the issue there, again, was that he was not ineligible for parole. He was just functionally ineligible but not legally ineligible for parole. Is it your position, do I understand you right, that any time a prosecutor refers in a closing argument to something that might make a person dangerous if that person were released in the future, like an antisocial personality or a history of violence or three prior murders, that's sufficient to trigger Simmons? Your Honor, I don't think it is any time the prosecutor mentions it. In this argument, again, on half the pages of the closing argument, there was a reference to future dangerousness. The context with which the arguments were made in talking about habit, addiction, propensity, things that would not change. How is this prosecutor supposed to argue? I mean, the actual aggravating factor is a series of prior murders. Isn't any argument about that, somebody who keeps killing people, in your mind going to be an argument about future dangerousness? Well, first of all, Your Honor, the prosecutor could have argued just the horrible circumstances of those crimes. But second of all, the prosecutor is allowed to make these arguments. It's fine for the prosecutor to argue all he wants to that this person is going to be a danger in the future and you should give him death. But what the Supreme Court says is that it is a matter of elemental due process. If the prosecutor makes that argument, you have to give an instruction. But Simmons, I mean, there was an alternative theory in Simmons, right, that just as a matter of Eighth Amendment law, there should always be an instruction. It's mitigating that a defendant will never see the light of day. It's ineligible for parole. That instruction ought to be given in every case. That's not the approach the Supreme Court took. The Supreme Court clearly thought that you could, in fact, argue a history of prior murders justifies imposition of the death penalty even though the obvious inference from the fact that this person keeps killing people is that if they get out, they might do it again. I mean, the court was not prepared to say in every argument that touches on something that would make somebody a future danger that's sufficient to trigger this requirement of an instruction, right? Not in every argument, Your Honor, but the heart of Simmons was that parole eligibility mattered to juries. The court in Simmons cited the history of Do you think it would make sense under Simmons if the rule coming out of Simmons turned out to mean that in 90% of cases you needed to get this instruction? Because the heart of Simmons is it's just really important for juries to know this. Your Honor, I see that my time is up. May I please? You can answer the question. Thank you. I do, Your Honor. I think, yes. Thank you. Could I follow up with one question? Kelly wouldn't have been necessary, would it? No, Your Honor. No, no, what I'm saying is Kelly would not have been necessary if your position about Simmons is correct. Which position, Your Honor? Your position that with regard to the inferences regarding parole and eligibility, regarding future dangerousness. In other words, you're suggesting to me, it seems to me, that because there could be inferences drawn regarding future dangerousness as well as heinousness that the Simmons instruction was mandated. Okay? Well, Kelly cleared that up in 2002, didn't it? Your Honor. There was some question following Simmons whether that position was correct and Kelly then took the position, yes, if there's a fair inference that it could be future dangerousness as well, you are entitled to the parole and eligibility instruction. And it seems to me that you're cobbling Kelly and Simmons together without distinguishing the fact that your case came before Kelly. Your Honor, certainly Kelly talked a lot more about the implication of future dangerousness, but that language was there in Simmons. Simmons talked about a generalized argument of future dangerousness, and in Justice O'Connor's concurrence, she talked about a prosecutor implying future dangerousness. Now, she said the prosecutor argues that the defendant will pose a threat to society in the future. Doesn't that suggest that the state must explicitly put the future dangerousness at issue in terms of O'Connor's plurality opinion, something that was later modified in Kelly? I understand that's been a big question, Your Honor, but Simmons did say that the prosecutor strongly implied the defendant would be let out eventually if not given the death penalty, and they did use that language, strongly implied. My understanding was that there were multiple reasons to clear up Kelly, mainly because South Carolina continued to not apply Simmons in their case. I'm sorry, just while we're talking about Kelly, I thought there was a footnote in Kelly saying we are not saying that mere inferences from evidence is enough. In this case, we have actual argument, and that's what we're resting on. Are you arguing that after Kelly it's enough that if a jury could infer from the evidence presented by the state that there might be future dangerousness even if the state never argues it, that's enough to trigger Simmons? No, Your Honor, that's not what I'm arguing. All right. Thank you. Thank you, Mr. McKeel. May it please the Court, Jess McKeel with the Attorney General's Office representing the respondent in this matter. Your Honors, there's several key points that I would submit warrant upholding the district court's denial of the petition for root of habeas corpus, and I think, Judge Neumeier, you hit on the first one, which is at the standard. It's a difficult standard. Bert V. Titlow said if it's a difficult standard, and it is, it's because it was meant to be. It has to be clearly unreasonable. Here, what needs to be clearly unreasonable in the state Supreme Court's opinion in 1998 was its application of Simmons to the facts of this case. Now, Kelly, Ramdas, Schaefer, Lynch, these all postdated the appeal, the trial, the appeal. What we've got here, the slate that the court had to look at was Simmons. Can I ask a question about that? Yes. To the extent that Kelly says, at least as to the question of what counts as arguing future dangerousness, I can't remember the exact language, but it's like we are four square within Simmons. We need to know more than apply Simmons. Hasn't the Supreme Court held that we can at least look at Kelly just to the extent it's an illustration of what Simmons meant? I mean, it's not like we're not allowed to turn the page and look at Kelly. If it says expressly we are no more than applying Simmons, we can at least look at it to see what Simmons meant on the day it was announced, right? I would submit that under Cullen, what Cullen said is you can only look at the cases that were in existence at the time. Even if there's clarification that comes later, the clearly established law would have been the same. So you think that overruled Wiggins v. Smith? Pardon, Your Honor? So do you think Cullen overruled Wiggins v. Smith? That's the case where the court says you can, in fact, look to a later decided case as an illustration of an earlier announced principle if it's not making any new law. I think, you know, Cullen just said that what is the slate that we've got before us? And in part, you know, this goes in some ways to the issue of what did Kelly do or not do. You know, we've got at least two circuits that said that Kelly did, in fact, broaden Simmons. There's, you know, the counsel has cited language about implying was that sufficient under Simmons? There's this question, right, in Kelly about forget argument. If it's enough that you can infer it from the evidence, does that trigger Simmons? As I read Kelly, it does not actually decide that question. But I'm talking about the part of Kelly that says when it comes to argument, what does it mean to argue future dangerousness? Put to one side this inference from evidence. This is what it looks like. I don't understand goes on to say, and this is squarely commanded by Simmons. This part of the opinion, what we are doing here, four square with Simmons. Wiggins v. Smith says you're allowed to look at cases that post-state the state adjudication to the extent they are four square within the prior precedent and just work as an illustration of that. I'm not sure this matters for this case, but I'm just a little nervous about your argument that we can never sort of turn the page and look at another case. No, and I do understand that point from Wiggins. I just think it's difficult to judge what a court does in 1998 based on clarifying statements made in 2002. And again, I do think it is important that Kelly did broaden Simmons. So do you read Kelly to actually hold that inferences from evidence are sufficient to trigger a Simmons instruction? Not necessarily inferences from the evidence, but from argument. The question is when, see O'Connor's plurality opinion, which everybody I think is in agreement was the controlling opinion and does establish a clearly established law for AEDPA purposes. O'Connor says when the prosecutor, and this is her language, specifically argues future dangerousness. Now, the only time in her opinion that the word imply comes up is when she said that the prosecutor strongly implied that the defendant would get out of prison. And she emphasized would in her own opinion. So the question was not whether or not he would be a danger, it's whether or not he would actually get out. That was where the implication was. And both the Third Circuit and the Eleventh Circuit have said in terms of just implying dangerousness, Kelly did broaden that. And Kelly also clarified one thing that was left unsaid in Simmons is that evidence can have multiple purposes and arguments can have multiple meanings. You know, it's not that things are capable of being said and then unsaid. And two of the justices that joined O'Connor's opinion dissented in Kelly on that very point as well as on the point about what can be implied from an argument. And they said this seems to be an extension, perhaps a logical extension, but it is an extension of Simmons. Do you agree, though, or do you agree that if this case, if Mr. Warren's case had been heard after Kelly, you'd have a problem? I think, again, going back to Judge Niemeyer's point, and I believe Judge Harris, you mentioned this as well, it's all backwards looking. So I think really this is not so much a future dangerousness argument, at least in terms of was the Supreme Court reasonable or unreasonable, not whether Judge Eagles or this court would view it in the first instance, you know, looking at a clean slate, did what the prosecutors say amount to future dangerousness? And I think when you look at it in context, you look at actually what was said. For example, the one phrase about how many more chances, and it said one, two, three, period. So, in other words, there are no more chances. It wasn't future looking. I also think it's important to note. You didn't answer my question. Would you have a problem under Kelly if this case had been after Kelly? I don't believe so, and maybe that's why getting mired down at Kelly. It just seems to me that you have to, that your argument depends on the fact that you're looking just at Simmons and not at Kelly. I would submit that even if Warren's appeal was heard in 2003, Kelly did exist. I think the State Supreme Court still acted reasonably under EPA, and I think that's because if you actually look at what was said, look at it in context, and it's inherently difficult, obviously, on the cold record to know what was emphasized, tone of voice, but, you know, we deal with that as we have to in any appeal. The problem is that it's 34 pages of argument. The only future looking one that I can find is this statement about what will stop him, and similar language that was referenced in the Third Circuit said, you know, references to stopping. That is actually, again, kind of backwards looking. I don't think that necessarily amounts to future dangerousness, but it's a question of was the State Supreme Court reasonable or unreasonable? Well, I suppose if you pulled that out and cited that, you could probably get support for the notion that it is forward looking or maybe not. It's ambiguous, but I think your argument is that when the prosecutor said that, the prosecutor was advocating for the heinous, the terrible facts of the crime and the repetitive nature of this man's conduct, and it needs to end now with the death penalty. And I think that was his intent fairly said, but if it wasn't, then you have to still ask the second question. If the Supreme Court of North Carolina so concluded, was it unreasonable in concluding that? I would agree, Your Honor. And again, it is important to look at context. It's easy to splice out individual statements from a 34-page argument and say, well, this one must be forward looking. This one is implying future dangerousness. But there are different themes that came out from the prosecutor's argument, and if you cabinet by what is said both before and after, I think it is clear from the context that this was not future looking, and it is certainly distinguishable from Simmons. Simmons directly equated death penalty because of future dangerousness. It says this person is a threat. Your verdict will be an act of self-defense. The verdict is an act of self-defense. We've got nothing even remotely comparable. Notwithstanding Simmons and Kelly, it seems to me the prosecutor should, in every case, make clear to the jury whether it's life without parole or not. I don't know why it's so harmful and so tricky. We have the death penalty here, or we have life without parole, or we have life with parole, and just tell the jury that out from the gate. You don't have all these. We have case after case on these arguments, and everybody seems to think that the verdicts and the sentences are going to hang on those very little words informing a jury, and it would have been, I'm fairly confident that the evidence was plenty strong that the heinousness and the seriousness of this aggravating factor would have probably led to the same thing, but I know trial lawyers try to maximize their positions, and sometimes they get close to the line that creates a pellet review. It does, Your Honor, and particularly during this time period. I mean, obviously all these issues are still getting fleshed out. There's the notion that the South Carolina Supreme Court was sort of adamantly defying Simmons, hence the reason we had to have Schaefer, hence the reason we had to have Kelly. Prosecutors and defense attorneys have to make strategic decisions throughout any trial, and notably one of the strategic decisions made by defense counsel here was to not bring up parole and ineligibility in their argument. They certainly could have. They specifically, from the outgo, did a motion in limine to keep out any evidence from the jury about this prior Buncombe County death sentence. They didn't want the jury to hear that, and so then it becomes, well, we do want the jury to hear about parole and eligibility, but we don't want them to hear about the prior death sentence, which incidentally not only was on direct appeal, but the sentence itself was also stayed. So there is a question as a matter of state law, was he truly parole ineligible? We've got the prior capital conviction, which suffices for the aggravator. Now the question is, as to the sentence. Again, this goes back, I think, though, probably the simplest answer for this case is what Your Honor just said, which was really getting to Brecht. Brecht's harmlessness resolves this probably easier than Richmond did. Richmond went through an analysis, first said, we think that future dangerousness was argued, and in so doing found that the State Supreme Court was unreasonable. Then it said, well, we think that a prior unrelated crime can make somebody parole ineligible, triggering Simmons, and in doing so it spliced together four different opinions from Simmons to find clearly established law, which U.S. Supreme Court since said you can't do that. But then it got to Brecht, and this case is really on all fours with the Brecht analysis from Richmond. In many situations there are direct similarities. We've got no remorse, attempts to conceal the crimes, multiple victims. We know that the jury already knew that this person had been convicted of strangling someone to death with their bare hands just as he did to the victim in this case. Richmond obviously involved other crimes. There was rape. There was murder of children. There was some serious vile brutality in Richmond. Let's be clear about that. But this is, I would say, in many ways just as vile because it's multiple victims over a series of events, each time done as sport. I mean, this is something that this defendant liked. He got gratification out of it. And there was not even necessarily a current that runs through this. One person he knew very well. One was a casual acquaintance. One was a total stranger that just happened to be at the wrong place at the wrong time and ended up tied down in the river. Can I ask you, something you said about North Carolina law puzzled me. Under North Carolina law, are you saying that even if Simmons doesn't apply, the defendant has a right to raise the question of parole ineligibility? Do you know what I'm saying? Once the district court in this case, I'm sorry, once the trial court in this case said, you don't get a Simmons instruction. Forget it. You're saying that it is still, as a matter of North Carolina law, it's okay for the defendant to argue parole ineligibility? I read the North Carolina Supreme Court cases saying absolutely not. to our state law decision that parole ineligibility does not go in front of her. That's correct. And I think what they cited was State v. Conway and prior state court decisions. So once, in this case, the trial court says you don't get a Simmons instruction, the defendant would be unable to argue parole ineligibility, right? Not necessarily. I think the minute that, and that's why I think defense counsel has to be particularly attuned to what is actually being argued. So a lot of this discussion about parole ineligibility done at the trial court level went to, okay, this particular sentence. It's either death or it's life with parole. So Simmons doesn't apply, and we're not going to get into the question of parole eligibility and instructions because our state court precedent says you can't go there. So that's why it's important, especially in the wake of Simmons, to listen to the arguments. Was future dangerousness actually argued to timely object and then to base your objection on Simmons? There was no objection to any of these particular passages. And notably, none of these particular passages that I'm seeing in the brief were actually raised on direct appeal. It's been sort of a little bit of a morphing. I mean, all that was raised on direct appeal was that quote about, you know, the Bible gives us, you know, tells us to turn the cheek, gives us second chances, how many more chances. But all the quote-unquote forward-looking arguments, none of that was actually even raised on direct appeal. So I would submit that you could argue Simmons, but you've got to carefully listen to the arguments. And note there was no objection based on future dangerousness. They asked for it one more time later, didn't even get a ruling on it, which I would submit, you know, I know procedural bar, procedural default wasn't raised below. I kind of inherited this case. But the fact is that I think that would have been a waiver in the State Supreme Court under State appellate level. Let me ask you, if the defense attorney asked the court for an instruction and the court says no, is the attorney barred from making the argument himself to the jury? I would submit that he could still make the argument. I mean, I'm just thinking of Justice O'Connor's formulation of this, saying that it could be done by instruction or by attorney's argument to the jury. But there is this North Carolina overlay, and I suspect if the attorney asked for the instruction and the court says I'm not going to give it, I don't know if that means you can't argue it. It seems to me the Supreme Court suggests that you can argue it now unless the court said you can't argue it. And that's one other distinction from Simmons. As Justice Ginsburg's concurrence pointed out in Simmons, the defense counsel was specifically prohibited from arguing it. I'm genuinely confused. I thought that your Simmons relief can come in one of two forms. If Simmons applies, you can either get an instruction by the court, or maybe the court can say, well, I'm not going to do it, but you go ahead and do it. But either way, it's because you won under Simmons. You are entitled to inform the jury of this fact. But in this case, under North Carolina law, the default is you are not entitled to inform the jury of that fact. And so once the judge says this isn't a Simmons case, I don't understand how a defense lawyer can stand up and say, well, that's okay, but I'm going to go ahead and instruct the jury anyway, or I'm going to tell the jury this anyway. Well, I think there's two different components to that. They could have put on evidence but, again, chose not to about this prior capital conviction. And it's important, basically, that making him parole-ineligible. And then counsel is allowed to argue anything that's based on the evidence. And you're saying the government would not object, would not – if they did that, the government would not say, what are you doing under North Carolina law? It is irrelevant that he is parole-ineligible. That's what the state Supreme Court said in this case. It is not relevant. And you're saying the government is fine with that. If the defense wants to put that on as evidence, it is now the government's position. That's fine. I'm not sure if it would have been fine or not. I'm guessing not. Entirely possible. And that's maybe the quandary that's created. I think the question is telling because if the judge says this is not a Simmons case, you can't get any comfort from Simmons. And so then you have to follow the law that's applicable, which is the North Carolina law. Isn't that the question? I think so. But I think in this case there was not even an attempt to raise the issue. And I guess that's my point, is that that would have been one of the different safety valves, either instruction or argument. There was not an attempt to do so. I think regardless of whether there was an instruction, was or was not argument of counsel, shouldn't have been. In the end, I think this case is probably most easily resolved under Brecht. Your request is that we resolve this case under Brecht and not on the merits under AEDPA? The state's request is that the habeas petition be denied. Ultimately, this case has been going on for a long time. Thirty claims were raised on direct appeal in the late 90s. Eighteen claims were raised in the district court. District court sued Esponte. Sorry, district court stayed this decision over an objection by the state, and then sued Esponte, lifted it. It's been going on for a long time. And now we're here on just this one narrow issue. Can I figure out whether you are not confident in your argument that it's unusual for the government to say, go directly to harmless error? No, it's not for a lack of confidence. I think there is a clear point from the record that future dangerousness was not argued, thereby not triggering Simmons. The second question is, you know, we've got the Richmond case. I understand that. Does Campbell arguably obviate or, in some ways, cast some suspicion about Richmond's analysis in terms of parole and eligibility, you know, whether functionally ineligible? But at the end of the day, Brecht is probably the easiest way. And I just view that for most of my state court practice. Why is that easier than the reasonableness? It seems to me 2254D sets a high bar, and the Supreme Court keeps emphasizing how high that is. It has to be objectively unreasonable. And if we have this kind of debate, you have the seven justices of the North Carolina Supreme Court, you have a district court that have read it, and we are here arguing about what does it mean. We're not allowed under that standard, as I understand it, to make our own call. We're supposed to decide whether the state court was reasonable or unreasonable in what it concluded. And you think the harmlessness is a better approach? It may just be it's just so ingrained in state court practice where we see all the time, assuming argue into error, well, there is no prejudice. That's what I'm operating against. Well, plus, how can harmlessness really be, it seems to me from the state's perspective, to have confidence in its conviction to say that a death penalty, in a case in which the death penalty was imposed. And I think there is plenty of reason to be confident here. I'm almost out of time, but one thing I would point out, again, just drawing the distinctions between Simmons, and even if you want to get to Kelly as a clarification, Kelly said defendant's characteristics made him dangerous. So he used the word dangerous. Richmond said the only way to ensure he doesn't kill again. I mean, those are so different than what we've got here. And so I would submit that you are through the red light. Yes. Thank you very much, Your Honor. All right. Ms. Parks. May it please the Court. Your Honors, this case is similar to Richmond because there were arguments of future dangerousness. But a difference is that in Richmond this Court found the future dangerousness argument was one last thought left with the jury. Arguments about future dangerousness were scattered throughout. The Fifth Circuit in Hodges talked about a lack of remorse as being an argument of future dangerousness. And in Richmond this Court found that the jurors feeling that they were the next victim was an argument of future dangerousness. And if you'll recall the cell phone argument, this is why you need a cell phone because Leslie Warren might be coming down the road and offering you help. Can I sort of give you a chance to respond to what your colleague said? Does it matter that the cell phone passage and some of these other passages were never brought to the attention of the state courts? No, Your Honor. The argument was brought to the attention of the state courts, and the state courts had the ability to look at the record in the case. So it's up to the state court to sort of read the entire thing and see if it can pick out anything that might have warranted a Simmons instruction even if nobody is arguing that it. Yes, Your Honor. This Court in Richmond found an unreasonable application, but Judge Niemeyer talked about the harmlessness. And one of the things that's important to look at in this case was the strength of the mitigation that was presented. Some of the evidence that supported the mitigation in this case was the years of psychological evaluations that Leslie Warren had from the time he was three. When he was two years old, his father put him in the middle of the Pisgah Highway and said he would be better off dead. At age five, his father burned down the family's home and all their belongings. And at age 14, he was hospitalized for a year in a mental institute and tried to hang himself. The mitigation in this case was significant and makes the trial court's error not giving the Simmons instruction not harmless. Another reason the error was not harmless was the frequency with which these arguments were made. In Brecht, one of the things that the court pointed out was that it was an infrequent reference to the defendant's post-Miranda silence. And that's why it wasn't harmless in that case. By contrast, the Fifth Circuit in Hodges said that there was extensive reliance on future dangerousness in that case. Your Honors, in this case, the State over and over, time and time again, talked about Mr. Warren as irredeemable, unrepentant, about his pattern of harming people, that he was a sociopath with a habit of killing women and a propensity to commit violent crimes. The addiction, the habit, these are all fixed and unchanged characteristics. And after making all these arguments and asking how many more chances we have to give him, the State court asked the jury to impose the death penalty. That would have been fine. That's perfectly acceptable. But if the State makes future dangerousness an issue with these arguments, not just the evidence presented, but the arguments, then the trial court is required to give a Simmons instruction. Simmons talked at length about the importance of this due process right. And Simmons talked about how significant parole eligibility is, that it's crucial, it's central to the jury's sentencing decision, and it's indisputably relevant. In North Carolina at that time, a person convicted of life with the possibility of parole would have been eligible for parole in 20 years. The studies cited by the court in Simmons show that most juries believe that a person will be let out in 17 years with a life sentence. These were issues where juries were confused about parole eligibility. And as I said, the heart of the Simmons case was the importance of a jury knowing accurate information in making its sentencing determination. We know that in North Carolina it matters. There are several very heinous murders in North Carolina in recent years in which the juries have given a life sentence because they've gotten an instruction that the defendant would never be released. In State v. Cooper, the defendant killed five separate people on five separate occasions. State v. Hartley, the defendant killed his mother, brother, and raped and killed his sister. But these cases, after the jury received an instruction that the defendant was not parole eligible, still chose life without parole. Your Honor, the State made a future dangerousness an issue in this case and asked the jury to do something it knew had already been done, stop Mr. Warren. This was the very scenario that the Simmons court and courts as far back as Gardner v. Florida, where the Supreme Court said that a defendant can't be executed on the basis of information he had no opportunity to deny or explain, have tried to prevent. As the court said to counsel in Kelly, if the defense lawyer in this case had gone against the judge saying, we will not discuss this, and argued Simmons, he would have had his head handed to him on the platter. That was the court's words in Kelly, and that wasn't going to happen. The court prevented Warren from denying or explaining those arguments. This violated Warren's due process rights, and it wasn't harmless. The goal of the Supreme Court, and I think for all of us, is the reliability of the sentencing determination. And because the mitigation was so strong, and because the arguments of future dangerousness were so frequent in this case, we can't rely on the sentencing determination here, because the jury did not get an instruction. Thank you, Ms. Parks. I note you were court appointed in this case, and on behalf of the court, I want to recognize your service. Actually, your very good service. You've done a very important duty, as you know, and we have the important duty of making decisions, so that's something to be proud about, this system. We'll come down and greet counsel and proceed with the next case.
judges: Paul V. Niemeyer, Barbara Milano Keenan, Pamela A. Harris